JOSEPH GASCOIGNE & another *vs.* CARY BRICK COMPANY.

Suffolk.      January 12, 1914. — March 31, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Contract,* What constitutes, In writing. *Damages,* In contract.

Where, in an action for the breach of an alleged contract to deliver bricks of the quality and color of a certain sample, correspondence between the parties is put in evidence, but the jury properly can find that the letters were preliminary to an interview in which the terms of the sale were settled and the order for the bricks was given and accepted, and where the testimony is conflicting and irreconcilable as to what these terms were, it is for the jury to determine whom they will believe and what the oral contract was.

In an action for the breach of an alleged contract to deliver to the plaintiff, who in connection with a contract to build a dwelling house had agreed to build a certain brick wall, bricks that were in color like a sample that had been accepted by the architect, where it appears that the plaintiff, by reason of the color of the bricks furnished by the defendant, had been required by the architect to demolish the wall and to rebuild it with other bricks, and there is evidence that on account of wet weather when the wall was laid, the natural color of the bricks was not disclosed until after they had been used, the plaintiff, if he proves a breach of the contract, should be allowed to recover, not only for the difference in value between the bricks furnished by the defendant and bricks of a color like that of the sample, but also the expense necessarily incurred by him in taking down and rebuilding the wall.

CONTRACT for an alleged breach of contract in failing to deliver to the plaintiffs brick of a required quality and color alleged to have been sold by sample to the plaintiffs by the defendant. Writ dated April 3, 1911.

In the Superior Court the case was tried before *Lawton,* J. It appeared that the plaintiffs, in connection with a contract to build a brick house at North Easton, had agreed to build a twelve inch brick wall intended as a hothouse wall, and that the contract made with the defendant was for the sale and delivery of the bricks required for this wall. The evidence is described in the opinion, where also the substance of the defendant's first, second, third and sixth requests for rulings is stated. The fourth and fifth rulings requested by the defendant were as follows:

"4. Should you find an agreement to receive a certain stated

quality, evidence that the sale was by sample is to be considered only on the question of identity in kind, and such consideration is not extended to comparisons in degree or quality.

"5. Evidence of sample is admissible only when the writing does not distinctly define the article to be delivered, so as to enable its identity to be seen upon the face of the transaction."

The judge refused to make these as well as the other rulings requested by the defendant, and the defendant excepted.

For the purpose of showing the amount of damages which the plaintiffs claimed by reason of the failure of the defendant to furnish bricks which conformed in color to the color of the sample, the plaintiffs offered evidence tending to show the necessary cost of tearing down the wall and rebuilding it and the cost of culling the bricks that had been 'taken down and the hauling of other bricks and the labor and material furnished for the rebuilding of the wall. The plaintiffs asked the judge to instruct the jury that they were entitled to recover damages for these various items of expense to which they had been put on account of being obliged to take the wall down. The judge excluded all evidence of damage with the exception of the cost of culling the bricks and instructed the jury that in assessing damages they could allow the plaintiffs only a sum equal to the difference between the value of bricks culled to the color of the sample brick and the bricks actually delivered to the plaintiffs under their contract.

The jury returned a verdict for the plaintiffs in the sum of $220, which would be the difference between the value of the bricks delivered and bricks of the color of the sample. The defendant alleged exceptions. The plaintiffs also alleged exceptions.

The case was argued at the bar in January, 1914, before *Rugg,* C. J., *Braley, Sheldon, De Courcy,* & *Crosby,* JJ., and afterwards was submitted on briefs to all the justices.

*C. W. Lovett,* for the defendant.

*J. L. Keogh,* for the plaintiffs.

BRALEY, J. It is unquestioned, that delivery was free on board at the place where the bricks were to be used, and that the wall, after its erection, because of the variation in color, proved unacceptable to the supervising architect, and that the plaintiffs under their contract with the owner were obliged to demolish and rebuild it. The defendant, although promptly notified

of the imperfections upon discovery, contends, that the sale was for a quality of bricks known to the trade as "up and down hard brick," wherein uniformity of color is not contemplated, and asked the presiding judge in the first, second, third and sixth requests to rule, that, as there was no express or implied affirmation of quality and the defendant was not charged with fraud, the plaintiffs must be presumed to have bought on their own judgment. St. 1908, c. 237, § 12.

But these requests could not be given. The contract was not confined to the correspondence. The letters, as the jury properly could find, were merely preliminary to the interview between the plaintiffs and the defendant's representative, when the terms of sale were settled, and the order for the bricks given. It is in the evidence of what then took place that the contract must be sought. The testimony is irreconcilable, and the jury were to determine whom they would believe. If they accepted the plaintiffs' statements, the defendant's agent, having been informed that, as both sides of the wall would have to be faced, the facings necessarily would have to be of a uniform shade or appearance similar to the brick exhibited which the architect had accepted as of the required color, replied, that he knew what the requirements were and that the defendant would furnish the bricks accordingly. The order, thereupon given and accepted, the jury could say constituted a sale, where the plaintiffs relied on the statements of the seller, and the defendant impliedly warranted, that the bricks delivered in bulk should correspond with the sample. *Atwater* v. *Clancy,* 107 Mass. 369. *Gould* v. *Stein,* 149 Mass. 570. *Borden* v. *Fine,* 212 Mass. 425. St. 1908, c. 237, § 16. If these terms were found to constitute the contract, the evidence was plenary that the shipments did not conform to the sample in quality; the plaintiffs therefore could recover damages, and the fourth and fifth requests were inappropriate. *Borden* v. *Fine,* 212 Mass. 425, 427, and cases cited.

The admission in evidence of the plaintiffs' ledger is not shown to have harmed the defendant, and no error appears in any of the rulings to which the defendant excepted. See St. 1913, c. 288.

The plaintiffs, although they prevailed, are dissatisfied with the rulings as to the measure of damages. By the acceptance of title the plaintiffs did not as matter of law release the defendant,

or bar their claim for damages. St. 1908, c. 237, § 49. It was a question of fact whether they waived the warranty and took the bricks as they found them on the cars, a negative answer to which has been established in their favor by the verdict. *Taylor* v. *Cole,* 111 Mass. 363. *Sessa* v. *Arthur,* 183 Mass. 230. *Borden* v. *Fine,* 212 Mass. 425, 428. But, if they knew or ought to have known of the defective coloring, no damages caused by the use of the bricks can be recovered. *Day* v. *Mapes-Reeve Construction Co.* 174 Mass. 412. The jury were to determine, whether by reason of moisture caused by the weather the bricks at the time of delivery, and when placed in the wall, had taken on and retained a darker appearance, rendering it difficult to ascertain their true or natural color, and, if this appeared, whether the plaintiffs, who might rely on the presumption that the defendant would perform its contract, had acted with reasonable diligence in using the bricks without further inspection, or whether the general appearance was such that imperfections would not have been disclosed by an extended examination. A conclusion that no negligence had been shown, in connection with the uncontradicted evidence that notice was promptly given to the defendant who declined further performance, would warrant the assessment of damages for, not only the difference between what the plaintiffs bought and what they received, but also the expense of taking down and rebuilding the wall. St. 1908, c. 237, § 49. *Hanson & Parker* v. *Wittenberg,* 205 Mass. 319, 327, 328.

The judge, whose attention had been directed to the rule to be applied by the plaintiffs' request, and in his rulings upon the exclusion of evidence, should have so instructed the jury. *Bride* v. *Clark,* 161 Mass. 130. But instead he charged, that the plaintiffs could recover only a sum equal to the difference between the value of bricks the color of the sample and the value of the bricks actually delivered. Nor was the error cured by the further instruction, that the jury might find the difference consisted in the expense to the plaintiffs to cull from the mass the bricks which they used in the reconstructed wall.

A majority of the court are accordingly of opinion that the defendant's exceptions should be overruled, but the plaintiffs' exceptions must be sustained.

*So ordered.*